UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GERALD LEROY WERTH,

       Petitioner,

     v.

CINDI S. CURTIN,

       Respondent.[1]

_____/

CASE NO. 5:09-CV-11472
JUDGE JOHN CORBETT O'MEARA
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION ................................................. 2
II.   REPORT ........................................................ 2
    A.   *Procedural History* .......................................... 2
    B.   *Factual Background Underlying Petitioner's Conviction* .................................... 3
    C.   *Standard of Review* .......................................... 6
    D.   *Denial of Self-Representation* .................................... 8
    E.   *Ineffective Assistance of Counsel* ................................. 12
        1.   *Clearly Established Law* ..................................... 13
        2.   *Analysis* ................................................ 15
    F.   *Recommendation Regarding Certificate of Appealability* ................................. 17
        1.   *Legal Standard* ........................................... 17
        2.   *Analysis* ................................................ 19
    G.   *Conclusion* ................................................ 20
III.  NOTICE TO PARTIES REGARDING OBJECTIONS ...................................... 20

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus. The Court should also grant in part and deny in part a certificate of appealability.

Specifically, the Court should grant the certificate with respect to petitioner's self-representation

claim, and deny the certificate with respect to petitioner's ineffective assistance of counsel claim.

---

[1]By Order entered this date, Cindi S. Curtin has been substituted in place of Kenneth McKee as the proper respondent in this action.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Gerald Leroy Werth is a state prisoner, currently confined at the Oaks Correctional Facility in Manistee, Michigan.

2.    On April 16, 2008, petitioner was convicted of breaking and entering a building with intent to commit a larceny, MICH. COMP. LAWS § 750.110; and possession of burglary tools, MICH. COMP. LAWS § 750.116, pursuant to his guilty plea in the Genesee County Circuit Court. Petitioner subsequently filed two motions to withdraw his plea, one through counsel and one *pro se*. The trial court denied the motions, and on March 19, 2008, petitioner was sentenced as a second habitual offender to a term of 47 months' to 15 years' imprisonment.

3.    Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

I.    THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS PLEA MADE PRIOR TO SENTENCING WHERE HE HAD A FAIR AND JUST REASON TO SUPPORT PLEA WITHDRAWAL AND PLAINTIFF DID NOT DEMONSTRATE SUBSTANTIAL PREJUDICE IN RELIANCE ON THE PLEA.

II.    APPELLANT MUST BE ALLOWED TO WITHDRAW HIS GUILTY PLEA BECAUSE THE TRIAL JUDGE VIOLATED HIS CONSTITUTIONAL, STATUTORY, AND RULE-BASED RIGHTS TO REPRESENT HIMSELF.

III.    THE TRIAL COURT ERRONEOUSLY DENIED APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA, MADE BEFORE SENTENCING, WHERE THE PLEA WAS THE PRODUCT OF INEFFECTIVE ASSISTANCE OF HIS ATTORNEY, WHO FAILED TO INVESTIGATE DEFENSE WITNESSES AND ACQUIRE EXCULPATORY EVIDENCE.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack

of merit in the grounds presented." *See People v. Werth*, No. 288151 (Mich. Ct. App. Nov. 10, 2008).

4.  Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Werth*, 483 Mich. 916, 762 N.W.2d 489 (2009).

5.  Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 20, 2009. As grounds for the writ of habeas corpus, he raises the self-representation and ineffective assistance of counsel claims that he raised in the state courts. In addition, he claims that his arrest was without probable cause and violated the Fourth Amendment.

6.  Respondent filed her answer on October 7, 2009. She contends that petitioner's Fourth Amendment claim is unexhausted, and that petitioner's remaining claims are without merit.

7.  Petitioner filed a reply to respondent's answer on October 23, 2009. In his reply, petitioner asks the Court to dismiss the unexhausted claim.

B.  *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the burglary of Khirfan's Blue Collar Market in Flint Township in the early morning hours of November 7, 2007. At the preliminary examination, Sergeant David Stone of the Flint Township Police Department testified that he was called to the scene, and it appeared that the store had been broken into. The alarm wires had been cut and the alarm box removed, and the store was in disarray. A number of items appeared to have been taken from the store, including knives and cigarettes. He was later informed that Ken Monroe of the Burton Police Department had recovered the cash register and lottery machine taken from the store. His investigation led him to a trailer park, where he learned that a man (later identified as Keith Finley) was selling cigarettes. He questioned Finley and eventually obtained consent from Crystal

Davidson, with whom Finley was living, to search her trailer. The search uncovered a trash barrel filled with cartons and loose packs of cigarettes, pornographic magazines, knives, several bottles of alcohol, and burglary tools. Petitioner was found hiding in a closet. Finley and Davidson admitted that they knew the property was stolen. *See* Prelim. Exam. Tr., at 7-23. Finley and Davidson each testified at the preliminary examination that petitioner was living in Davidson's trailer, and had often talked about looking at places to break into. They woke up on the morning of November 7 and found petitioner sitting in the trailer surrounded by the property stolen from the store. Petitioner admitted to them that he had stolen the items. Finley admitted that he had helped petitioner dispose of some of the stolen property, and had sold some of the cigarettes. Davidson testified that petitioner had written a letter to her apologizing for all the trouble he had caused, and the letter was admitted into evidence. *See* Prelim. Exam. Tr., at 23-65. On cross-examination, Davidson denied that she had called a former boyfriend and offered to sell him cigarettes. *See id.* at 62-63.

After the arraignment, petitioner filed a *pro se* motion for discovery of Davidson's cell phone records and for appointment of an investigator. Petitioner indicated that he wished to obtain the cell phone records to show that Davidson had in fact called her former boyfriend, and had thus perjured herself at the preliminary examination. Petitioner also indicated that he wished to discharge counsel and represent himself. The trial court ordered the prosecutor to provide information to petitioner regarding Davidson's cell phone number and allowed petitioner an opportunity to subpoena the cell phone carrier. The court did not rule on petitioner's request to represent himself, but indicated that it was unlikely that petitioner would be able to do so. *See* Pretrial Tr., dated 2/8/08. One week later, petitioner appeared with substitute counsel, who indicated that the records had not yet been obtained, and the matter was adjourned. *See* Pretrial Tr., dated

2/15/08.  On March 14, 2008, the matter was again postponed because the records had not been obtained from the cell phone provider.  *See* Pretrial Tr., dated 3/14/08.  On April 14, the day originally scheduled for trial, the parties informed the court that the prosecutor had submitted a plea offer to petitioner and that petitioner wished to have time to consider the offer.  Petitioner also renewed his request for discovery of the cell phone records, as well as his request to represent himself, claiming that he wished to represent himself because counsel had done nothing to help him.  The trial court denied petitioner's request to represent himself, concluding that petitioner was not equipped to do so and that the court could not assure that petitioner would control his behavior in the courtroom.  The court adjourned the matter to the next day, so that petitioner could consider the prosecutor's plea offer.  *See* Pretrial Tr., dated 4/14/08.

Trial commenced the following day, April 15.  On that day, the parties gave their opening statements, three prosecution witnesses testified, and one defense witness testified.  The following day, the parties informed the court that a plea agreement had been reached.  Under the agreement, petitioner agreed to plead guilty to the breaking and entering and possession of burglary tools charges in the information.  In exchange, petitioner would be sentenced as a second habitual offender, which subjected him to lower sentencing guidelines and a 15 year maximum, rather than as a fourth habitual offender, which would have subjected him to a potential sentence of life imprisonment.  The prosecutor also agreed not to pursue against petitioner unlawful driving away an automobile or receiving and concealing stolen property charges arising from a separate incident.  *See* Plea Tr., at 4-5; Plea Agreement dated 4/16/08.  Petitioner indicated that he understood the terms of the agreement.  *See* Plea Tr., at 5.  The trial court explained to petitioner the charges he was facing and the maximum penalty on those charges, and petitioner indicated that he understood.  *See id*. at 6-7.

The trial court informed petitioner of the rights he was giving up by pleading guilty and petitioner indicated that he understood his rights and that he was waiving these rights by pleading guilty. *See id.* at 7-9. Petitioner denied that any one had coerced or threatened him to plead guilty, or that he had been made any promises not reflected in the plea agreement. *See id.* at 9. Petitioner indicated that it was his choice to plead guilty. *See id.* at 9-10. The court then questioned petitioner regarding the circumstances of the crime, establishing a factual basis for the plea. *See id.* at 10-18. The court then accepted petitioner's plea. *See id.* at 18.

Prior to sentencing, petitioner filed two motions to withdraw his plea, one through counsel and one *pro se.* Following a hearing, the trial court denied the motions. Later the same day, the trial court sentenced petitioner.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer*

*v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Denial of Self-Representation*

Petitioner first contends that his plea was invalid because he was denied his constitutional right to represent himself. The Sixth Amendment, applicable to the states through the Fourteenth Amendment Due Process Clause, provides that a criminal defendant shall have the right to the assistance of counsel in his defense. *See* U.S. CONST. amend. VI. This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself. *See Martinez v. Court of Appeal of Cal.*, *Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 833-34 (1975). The right to assistance of counsel and the right to self-representation are thus correlative rights; the assertion of one necessarily constitutes a waiver of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970). Nevertheless, a defendant's waiver of his right to counsel and decision to proceed *pro se* must be knowing and intelligent. *See Faretta*, 422 U.S. at

835; *Carnley v. Cochran*, 369 U.S. 506, 516 (1962). As the Supreme Court explained, in order for the defendant's decision to be knowing and voluntary, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). However, the Supreme Court has "not prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), and there is "no sacrosanct litany for warning defendants against waiving the right to counsel." *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005). Rather, the adequacy of a defendant's waiver is determined from the facts and circumstances of the case. *See Tovar*, 541 U.S. at 88.

However, the right to self-representation is not absolute. *See Martinez*, 528 U.S. at 161. A defendant's request for self-representation must be made clearly and unequivocally. *See Buhl v. Cooksey*, 233 F. 3d 783, 792 (3d Cir. 2000); *Munkus v. Furlong*, 170 F. 3d 980, 983-984 (10th Cir. 1999). The right to self-representation is waived if it is not timely and unequivocally asserted. *See Jackson v. Ylst*, 921 F. 2d 882, 888 (9th Cir. 1990). The right to self-representation may also be waived through conduct which indicates that the defendant is vacillating on the issue or has abandoned his or her request altogether. *See Wilson v. Walker*, 204 F. 3d 33, 37 (2d Cir. 2000). A waiver of the right to self-representation may also be found if it reasonably appears to the court that the defendant abandoned his initial request to represent himself. *See id.*

Here, it appears that petitioner has a strong, if not meritorious, claim that he was denied his Sixth Amendment right to self-representation. Petitioner repeatedly requested that he be allowed to represent himself, and thus his request was unequivocal. Petitioner also asserted his request on

9

multiple occasions well before trial, rendering his request timely. Further, nothing in the record suggests that petitioner was incapable of validly waiving his right to counsel or of acting as counsel on his own behalf. And although the trial judge expressed concern about whether petitioner would be able to properly comport himself, "[t]his ground for terminating self-representation is unavailable here . . . because [petitioner] was not even allowed to begin to represent himself, and because he was respectful and compliant and did not provide a basis to conclude a trial could not have gone forward had he been allowed to press his own claims." *Indiana v. Edwards*, 554 U.S. 164, ___, 128 S. Ct. 2379, 2392 (2008) (Scalia, J., dissenting).

However, the Court need not decide whether petitioner was, in fact, denied his right to self-representation, because the claim is waived by petitioner's guilty plea. "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The fact that a denial of the right of self-representation raises a structural error does not alter the conclusion that petitioner's plea waived his claim. Although structural errors are presumed to be prejudicial and thus not subject to harmless error review, such errors are nevertheless subject to the general rules of waiver, forfeiture, and default. *See Johnson v. United States*, 520 U.S. 461, 466 (1997) (waived or forfeited structural error subject to plain error review under FED. R. CRIM. P. 52(b)); *Hunt v. Houston*, 563 F.3d 695, 704 n.2 (8th Cir.

2009) (habeas petitioner's claimed structural error barred by petitioner's procedural default of claim in state court); *Ward v. Hinsley*, 377 F.3d 719, 725-26 (7th Cir. 2004) (same); *United States v. Suescun*, 237 F.3d 1284, 1288 n.12 (11th Cir. 2001) ("Structural defects do not absolve a defendant's waiver of a defense or objection."). Indeed, *Tollett* itself supports this conclusion, finding that the defendant's plea in that case waived any claim that African-Americans had been systematically excluded from the jury selected prior to his plea, *Tollett*, 411 U.S. at 266-68, an error which the Court held in *Vasquez v. Hillery*, 474 U.S. 254, 262-64 (1986), to be structural. *See United States v. Moussaoui*, 591 F.3d 263, 280 n.12 (4th Cir. 2010) (relying on *Tollett* and *Vasquez* to support the court's conclusion that defendant's guilty plea waived his antecedent claim that he was denied his right of self-representation).

For this reason, the courts that have considered the issue, both state and federal, have almost uniformly concluded that a denial of the right to self-representation is waived by a subsequent voluntary guilty plea. *See Moussaoui*, 591 F.3d at 279-80; *Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir. 2006); *Ploof v. Gorczyk*, No. 96-2428, 1996 WL 705869, at *2 (2d Cir. Dec. 9, 1996); *United States v. Seybold*, 979 F.2d 582, 585-86 (7th Cir. 1992); *United States v. Montgomery*, 529 F.2d 1404, 1406 (10th Cir. 1976); *State v. Szemple*, 753 A.2d 732, 736 (N.J. Super. Ct. App. Div. 2000); *People v. Shields*, 613 N.Y.S.2d 281, 282 (N.Y. Super. Ct. App. Div. 1994); *State v. Claiborne*, No. 61343-0-I, 2009 WL 1140331, at *2 (Wash. Ct. App. Apr. 27, 2009); *State v. Jens*, No. 03-3135-CR, 2005 WL 147022, at *4 (Wis. Ct. App. Jan. 25, 2005). Only two courts have concluded otherwise. *See United States v. Hernandez*, 203 F.3d 614, 626-27 (9th Cir. 2000), *abrogated in part on other grounds by Indiana*

*v. Edwards*, 554 U.S. 164 (2008); *People v. Marlow*, 96 P.3d 126, 146-46 (Cal. 2004).[2] Because the view of the overwhelming majority of courts is more consistent with both *Tollett* and the general treatment of structural errors as being subject to waiver, forfeiture, and default, the Court should conclude that petitioner's self-representation claim is waived by his guilty plea. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Ineffective Assistance of Counsel*

Petitioner also contends that the trial court erred in failing to allow him to withdraw his plea, because his plea resulted from ineffective assistance provided by counsel. The Court should conclude that petitioner is not entitled to habeas relief on this claim.[3]

1.     *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17

---

[2]In *People v. Hoffman*, No. 266560, 2007 WL 397224 (Mich. Ct. App. Feb. 6, 2007), the Michigan Court of Appeals reversed the defendant's plea-based conviction, finding that the erroneous denial of self-representation constituted structural error requiring reversal, regardless of whether the plea was voluntary. Unlike the cases discussed above, however, the court did not consider the waiver issue.

[3]To the extent petitioner is asserting a claim based on the trial court's failure to allow him to withdraw apart from the underlying constitutional claim relating to counsel's assistance, his claim provides no basis for habeas relief. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169 (2d Cir. 1979). Thus, the trial court's failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id.* at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists

that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that

> there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

2.     *Analysis*

Petitioner contends that his plea was invalid because counsel failed to investigate exculpatory evidence, to wit, the phone records of Crystal Davidson. However, petitioner has failed to show how this evidence could have affected his decision to plead guilty. In the first place, this evidence was not "exculpatory" as petitioner claims. Even assuming that the phone records would show that Davidson in fact called her former boyfriend after the burglary–a fact for which petitioner still has no support–this evidence would not have exculpated petitioner. At most, it would have provided a basis on which to impeach Davidson's testimony at the preliminary examination that she had not called her former boyfriend. Even if impeached on this basis, however, the odds of petitioner's acquittal would not have significantly improved. It was already admitted by both Davidson and Finley that they knew the property in the trailer had been stolen, and it was admitted by Finley that he had helped petitioner dispose of some of the property and had sold some of the stolen cigarettes. Additional evidence that Davidson had also tried to sell some of the cigarettes would not have affected the jury's assessment of either her or Finley's credibility, and thus it would not have significantly impacted petitioner's weighing of the risks of trial versus the terms of the plea

agreement.

Petitioner also contends that counsel was ineffective for failing to interview Antonio Odom. In his *pro se* motion to withdraw the plea, petitioner indicated only that Odom would testify that prosecution witness Kenneth Werth (who had not yet testified, either at the preliminary examination or at trial, when petitioner entered his plea), was lying. Petitioner, however, provides no information regarding the purported substance of either Kenneth Werth's or Odom's testimony, much less any evidence to support his claim. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also, Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Because petitioner has provided no information, much less evidence, regarding the substance of Odom's purported testimony, he has failed to establish either the counsel was deficient or that he was prejudiced thereby.

Finally, petitioner contends that counsel was ineffective for failing to substantiate his claim that the preliminary examination transcripts were inaccurate. This issue, however, was explored both in pretrial motions and through the examination of the court reporter prior to the start of trial. *See* Trial Tr., Vol. I, at 23-33. Beyond petitioner's speculative assertion, there is absolutely nothing in the record to indicate that the preliminary examination transcript does not accurately reflect the

proceedings at the preliminary examination. And, petitioner has failed to explain in his petition what the alleged inaccuracy was or how it could have helped exonerate him at trial.

In the end, the prosecution had a substantial case against petitioner. Had he gone to trial and been convicted, he could have been sentenced as a fourth habitual offender to a term of up to life imprisonment. Further, he could have faced trial on additional charges of unlawful driving away an automobile and receiving and concealing stolen property, which given petitioner's prior record would also have subjected him to potential extensive sentences, which additionally could have run consecutive to the sentences to which he pleaded guilty. *See* Plea Tr., at 4. Weighing this likelihood of a conviction followed by a severe penalty, petitioner concluded that his interests were best served by accepting a plea deal limiting his sentencing exposure to a maximum of 15 years imprisonment. Counsel's alleged errors with respect to collateral matters of little exculpatory value could not have impacted petitioner's assessment of the risks and benefits of trial versus the plea deal. Thus, petitioner cannot show that counsel was ineffective, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880

(1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

Here, if the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability with respect to his ineffective assistance of counsel claims, for the reasons explained above. However, the Court should conclude that petitioner is entitled to a certificate of appealability with respect to his denial of self-representation claim, because the resolution of that claim is reasonably debatable and petitioner has made a substantial showing of a denial of a constitutional right. As explained above, petitioner has presented a strong claim that the trial court committed constitutional error in denying his requests to represent himself. I conclude that this claim is waived by petitioner's guilty plea in light of the majority position so holding and the consistency of this conclusion with the general rules regarding waiver by guilty plea and waivers of structural errors. However, although the majority of courts have reached this conclusion, there is contrary authority suggesting that a guilty plea does not waive an antecedent constitutional claim based on the denial of the right to self-representation, and the Sixth Circuit has not spoken on the issue. In these circumstances, the resolution of petitioner's self-representation claim is reasonably debatable, and the Court should conclude that petitioner is entitled to a certificate of appealability with respect to that claim.

G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny

petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should grant in part and deny in part a certificate of appealability. Specifically, the Court should grant a certificate of appealability with respect to petitioner's self-representation claim, and deny the certificate with respect to petitioner's ineffective assistance of counsel claim.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives                                        
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: <u>6/8/10</u>

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 8, 2010.

<u>s/Eddrey Butts</u>
Case Manager